IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DAVID LUTHER GODWIN and | ) | Case No. 06-50150 |
| KIMBERLY W. GODWIN, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION GRANTING MOTION TO
CONVERT CASE FROM CHAPTER 7 TO CHAPTER 13**

This MATTER came before the Court on August 15, 2007 upon the Motion to Convert a Chapter 7 Proceeding to a Chapter 13 (the "Motion to Convert"), filed by David and Kimberly Godwin (the "Debtors") on June 23, 2007, and an Objection to Motion to Convert to Chapter 13 (the "Objection"), filed by Connie Howard ("Ms. Howard") on July 16, 2007.  Brian P. Hayes appeared on behalf of the Debtors, and Robert E. Price, Jr. appeared on behalf of Ms. Howard. After consideration of the Motion to Convert, the Objection, the evidence presented at the hearing, the arguments of the parties, and the relevant law, the Objection will be overruled, and the Motion to Convert will be granted.

**I. JURISDICTION**

The Court has jurisdiction over this subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984.  This is a core proceeding within the meaning of 28 U.S.C. §157(b).

## II. PROCEDURAL POSTURE

On February 10, 2006, the Debtors jointly filed for bankruptcy relief under Chapter 7 of the Bankruptcy Code. On February 10, 2006, C. Edwin Allman, III was appointed as the Chapter 7 trustee (the "Trustee"). On May 22, 2006, an Order Discharging the Debtors was entered in this "no asset" case, and on June 1, 2006, the case was closed. Subsequent to the closing of the case, the male Debtor was informed that certain real property owned by him and listed on the bankruptcy petition was foreclosed upon and that the sale netted surplus proceeds in the amount of $8,883.53 (the "Funds"). The Funds were held by the Brunswick County Clerk of Superior Court (the "Superior Court Clerk").

On February 22, 2007, the Debtors filed a Motion to Reopen Case (the "Motion to Reopen") in order to file motions to allow the Superior Court Clerk to release the funds on hand. The male Debtor stated that he still had a portion of his wild card exemption available to protect a portion of the Funds. The Motion to Reopen came before the Court on March 14, 2007, and no party objected. On March 19, 2007, almost ten months after the Debtors' case was closed, an Order was entered granting the Motion to Reopen and re-appointing the Trustee as the Chapter 7 trustee in the case.

On June 8, 2007, the Court entered an Order Approving Settlement of Exemption Overage (the "Settlement Order") between the Trustee, the Debtors, and the Debtors' attorney. The Settlement Order authorized the payment by the Trustee to the male Debtor and his attorney of $4,441.77 in full satisfaction of all claims that each might assert against the Funds. The Settlement Order allowed the Debtors to obtain one half of the Funds, with the other half to be retained by the Debtors' estate.

On June 23, 2007, the Debtors filed the Motion to Convert, along with amended bankruptcy schedules[1] and an amended Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (the "Form B22C").[2] On July 16, 2007, Ms. Howard, the male Debtor's ex-wife, filed the Objection.

On July 18, 2007, the Court held a hearing on the Motion to Convert and the Objection. Ms. Howard argued that the Debtors already received a Chapter 7 discharge in this case and that they should not be allowed to convert to a Chapter 13 after receiving a Chapter 7 discharge. Further, Ms. Howard argued that it would be an abuse of the bankruptcy process for the Debtors to obtain two discharges in one case. The Debtors argued that conversion to Chapter 13 would assist them with issues the male Debtor's divorce from Ms. Howard.

### III. FACTS

On April 3, 2000, Ms. Howard and the Male Debtor entered into a Separation Agreement and Property Settlement (the "Settlement Agreement"). On November 13, 2000, a Summary Judgement of Divorce (the "Divorce Judgment") was entered on behalf of the male Debtor and Ms. Howard in the District Court of Stanly County, North Carolina (the "State Court"). The Separation Agreement was incorporated by reference into the Divorce Judgment and provides, in part, as follows:

> EACH PARTY RESPONSIBLE FOR OWN OBLIGATIONS: Neither party shall charge or cause or permit to be charged to or against the other any purchase which either of them may hereafter make, nor create any obligations in

---

[1] The Debtors' amended Schedules I and J show monthly income of $3,168.00 and monthly expenses of $3,949.00, leaving net income of negative $781.00.

[2] The amended Form B22C showed that the Debtors were below median income earners for a household of four in North Carolina.

>the name of or against the other, nor secured or attempt to secure any credit upon or in connection with the other, or in his or her name. Each party shall promptly pay all debts and discharge all financial obligations which he or shall may incur for himself or herself, and does hereby agree to indemnify the other against any and all debts and other obligations which he or she may incur.

Furthermore, Schedule B of the Divorce Judgement stated that the male Debtor was to be responsible for the debt payments on a First USA credit card and an AT&T credit card.[3]

At the July 18, 2007 hearing, the Debtors conceded that the male Debtor did not pay the credit card debt that he was obligated to pay pursuant to the Divorce Judgment. In fact, on May 21, 2007, a hearing was held before the State Court (the "State Court Hearing") on Ms. Howard's Motion to hold the male Debtor in contempt for his noncompliance with the Divorce Judgment (the "Contempt Motion").[4] The male Debtor testified at the State Court Hearing that he had nothing with which to pay Ms. Howard, but that he did pay $298.00 each month on a debt owed on his 2005 Harley-Davidson motorcycle. The State Court found the male Debtor in contempt for violating a court order (i.e., the Divorce Judgment) because he willfully failed to pay, and ordered him to pay $289.00 each month to Ms. Howard, beginning on June 1, 2007.[5]

The July 18, 2007 hearing was continued to August 15, 2007, to allow the parties to present evidence as to whether the conduct of the male Debtor constituted "bad-faith conduct" pursuant to Marrama v. Citizens Bank of Massachusetts, 127 S. Ct. 1105, 1110 (2007), sufficient

---

[3] Pursuant to Schedule B, the balance owed on the First USA credit card was $4,219.06, and the balance owed on the AT&T credit card was $1,124.48. Chase, which eventually was renamed BankOne, was the creditor on the First USA credit card. Citibank was the creditor on the AT&T Universal credit card.

[4] A copy of the transcript from the State Court hearing was admitted into evidence.

[5] The order of the State Court finding the male Debtor in contempt was stayed for execution until the bankruptcy case was again closed.

to deny the Motion to Convert. The parties presented further evidence on August 15, 2007, and the matter was taken under advisement.

At no time after the signing of the Separation Agreement did Ms. Howard give the male Debtor permission to incur any debt in her name. However, the male Debtor continued to incur debt by making charges on the AT&T and First USA credit cards, which were debts for which Ms. Howard continued to be liable. The Male Debtor testified that there was an oral agreement between he and Ms. Howard that he could keep the cards and have use of them. He called both Citibank and Chase and expressed to them that he and Ms. Howard were divorced and that only he would be liable on the credit cards in the future. He was told by both Citibank and Chase that her name would be removed from the account and that she would be considered inactive. He also testified that he thought he alone was responsible for the debt on the cards. The male Debtor continued to notify Citibank and Chase of his new address whenever he moved. However, Ms. Howard's name remained on the billing statements that he received each month from Citibank. When he inquired, the male Debtor was told that the statement remained that way because it was originally set up that way and that he would be responsible for payment. Furthermore, the male Debtor testified that he could not, in fact, cancel the credit cards because she was the primary holder on each one.

For a period of time, the male Debtor made the required payments on the credit card debts that were assigned to him in the Divorce Judgment. Subsequently, the female Debtor (his new wife) was diagnosed with breast cancer, and since the Debtors had no health insurance, they charged substantial amounts on the First USA and AT&T credit cards to make ends meet. This led the Debtors to file for Chapter 7 bankruptcy relief on February 10, 2006.

Ms. Howard testified that she did not know until August of 2005 that her name had not been removed from the two credit card accounts and that the male Debtor continued to use the cards to incur debts in both of their names.[6]  At this time, Ms. Howard conferred with the male Debtor, and he told her that he would not be able to transfer the cards to his sole name.  The male Debtor continued to make charges on at least one of the cards.  Ms. Howard did not take any action to terminate either card or to remove herself from liability on the cards.

In March of 2006, Ms. Howard received notice of the Debtors' Chapter 7 bankruptcy.  Thereafter, she began to receive phone calls from Citibank and Chase in an effort to collect on the debt.  The debts on the two credit cards totaled over $48,000.00.  In May of 2006, Ms. Howard settled with Citibank and Chase for $11,000.00 and $13,000.00, respectively, which constituted roughly half of the debt owed to each creditor.  Ms. Howard also paid an additional $5,000.00 in taxes due to the charge-off liability on the debt settlement, and she paid $2,500.00 to an attorney to pursue the Contempt Motion.  While Ms. Howard does not have any further liability to either AT&T or First USA, her credit has been adversely affected.

### IV. DISCUSSION

**A.  The Statute**

The Debtors in this case would like to convert their re-opened Chapter 7 case to a case under Chapter 13 pursuant to Section 706 of the Bankruptcy Code.  The pertinent portions of Section 706 provide:

---

[6] Ms. Howard and her new husband attempted to purchase a vehicle and were told by the seller, after checking her credit to determine possible financing, that she had a substantial amount of credit outstanding in her name.  Ms. Howard testified that she had not checked her credit report in the five years since her divorce from the male Debtor.

6

>    (a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.
>    (d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

11 U.S.C. § 706. This case has not previously been converted, but a discharge was entered in the Chapter 7 case on May 22, 2006.

The statutory language "at any time" appears to confer an absolute right to convert so long as the case was not previously converted to a Chapter 11, 12, or 13 case. The Debtors' case has not previously been converted. Prior to the Supreme Court's 2007 ruling in <u>Marrama v. Citizens Bank of Massachusetts</u>, 127 S. Ct. 1105, 1110 (2007), several courts of appeals were split as to whether the right to convert was absolute for all debtors. Some circuits, including the Fourth Circuit, held that only the most egregious circumstances could justify denial of what is otherwise a clear statutory right. <u>In re Cooper</u>, 426 F. 3d 810, 814 (6th Cir. 2005)(disallowing Chapter 7 debtor conversion due to bad faith); <u>Finney v. Smith (In re Finney)</u>, 992 F.2d 43, 44-45 (4th Cir. 1993)("[C]ongress intended § 706(a) to confer 'the one-time absolute right' to convert from liquidation to reorganization, because 'the debtor should always be given the opportunity to repay his debts.'"); <u>Kuntz v. Shambam (In re Kuntz)</u>, 233 B.R. 580, 585 (1st Cir. BAP 1999) (debtor's one-time right to conversion may be denied in "extreme circumstances" constituting bad faith). Other circuits allowed conversion in spite of the debtor's bad faith conduct. <u>In the Matter of Martin</u>, 880 F. 2d 857, 859 (5th Cir. 1989)(conversion allowed after debtor received Chapter 7 discharge and the debtor engaged in pre-petition bad-faith conduct); <u>In re Croston</u>, 313 B.R. 447, 451 (9th Cir. BAP 2004)(debtor may convert if the statutory prerequisites are met, regardless of a

debtor's bad faith); Miller v. U.S. Trustee (In re Miller), 303 B.R. 471, 473 (10th Cir. BAP 2003) (debtor had absolute right to convert even though there was substantial evidence of abuse of the system); In re Street, 55 B.R. 763, 765 (9th Cir. BAP 1985)(conversion must be allowed if not previously converted, even if debtor received judgment of nondischargeability in Chapter 7 case).

In 2007, the Supreme Court, in a 5 to 4 decision, abrogated the Martin, Croston, and Miller decisions by holding that a Chapter 7 debtor forfeited his right to convert to Chapter 13 by engaging in pre-petition bad faith conduct. Marrama, 127 S. Ct. at 1110. The bad faith conduct by the debtor established "cause" that would have warranted dismissal or reconversion of her Chapter 13 case, rendering her unqualified to be a debtor under Chapter 13. Id. Such a result is consistent with the Supreme Court's view that the purpose of bankruptcy law is to give "the honest but unfortunate debtor . . . a new opportunity in life and a clear field for future effort." Local Loan Co. V. Hunt, 292 U.S. 234, 244 (1934); see Grogan v. Garner, 498 U.S. 279, 287 (1991).

**B. The Determination of Bad Faith**

Marrama does not define "bad-faith conduct" but merely notes that the conduct of the debtor must be "atypical" and limited to "extraordinary cases."[7] So how should a court determine bad faith in this context? There are two standards from which to choose: a plain meaning approach or an absence of good faith approach. Under the plain meaning approach, the

---

[7]"We have no occasion here to articulate with precision what conduct qualifies as `bad faith' sufficient to permit a bankruptcy judge to dismiss a Chapter 13 case or to deny conversion from Chapter 7. It suffices to emphasize that the debtor's conduct must, in fact, be atypical. Limiting dismissal or denial of conversion to extraordinary cases is particularly appropriate in light of the fact that lack of good faith in proposing a Chapter 13 plan is an express statutory ground for denying plan confirmation." Marrama, 127. S. Ct. at 1112 n.11.

common meaning of the term "bad faith" is used. See In re Computer Dynamics, Inc., 252 B.R. 50 (Bankr. E.D. Va. 1997)("bad faith" under F.R.B.P. 9011 has a plain meaning). The term "bad faith" is defined as "dishonesty of belief or purpose." Black's Law Dictionary 145 (8th ed. 2004).[8] Therefore a debtor who is dishonest in belief or purpose loses her absolute right to convert from a Chapter 7 case to a Chapter 13 case.[9]

Alternatively, a court could use a different standard, that of an absence of good faith. Many courts, pre-Marrama, wrestled with what constituted actions sufficient to surrender the right to convert. Post-Marrama, the Bankruptcy Court for the Eastern District of Pennsylvania used an absence of good faith approach by applying a "totality of circumstances" test that courts in the Third Circuit created and applied pre-Marrama to determine whether a motion to convert has been filed in good faith. In re Piccoli, No. 06-2142, slip op. at *6-7 (E.D. Pa. Sept. 27, 2007)(2007 WL 2822001)(citing In re Pakuris, 262 B.R. 330, 335-36 (Bankr. E.D. Pa. 2001)); see also In re Murray, No. 07-10101, slip op. at *4 (Bankr. D. Del. October 24, 2007). In

---

[8]Previous editions of Black's Law Dictionary expressed an older definition of "bad faith," meaning an absence of good faith. Black's Law Dictionary 127 (5th ed. 1979). This helps to explain why pre-Marrama cases used a lack of good faith approach to define bad faith.

[9]Bad faith certainly may be shown by acts of dishonesty, but it may also be shown in other ways. See In re Wampler, 302 B.R. 601, 605-606 (Bankr. S.D. Ind. 2003)(denying a motion to convert based on bad faith where the debtor filed the motion for an illegitimate purpose); In re Sully, 223 B.R. 582, 585 (Bankr. M.D. Fla. 1998)(finding bad faith in the filing of a motion to convert where debtor's intent in converting the case was not to reorganize, but to frustrate the bankruptcy process and regain control of settlement proceeds to the detriment of creditors); In re Lesniak, 208 B.R. 902, 906 (Bankr. N.D. Ill. 1997)(denying motion to convert based on bad faith where filing of motion was not motivated by desire to repay debts or provide greater dividend to creditors, but to save debtors' property). Because good faith is an "amorphous notion," it is impossible to identify the "infinite variety of factors" that might weigh in the "good faith equation." In re Condon, 358 B.R. 317, 326 (6th Cir. BAP 2007)(quoting Metro Employees Credit Union v. Okoreeh-Baah (In re Okoreeh-Baah), 836 F.2d 1030, 1033 (6th Cir.1988)).

evaluating the totality of the circumstances, the Piccoli court considered whether (1) the motion was filed in good faith, (2) the Chapter 13 plan was confirmable, (3) there was unfair prejudice to creditors (4) conversion was efficient in administration, and (5) conversion would further an abuse of the bankruptcy process. Id. at *7.

This Court concludes that the plain meaning approach better follows the Marrama decision. The plain meaning approach is more suited to protecting the rights and interests of the "honest debtor." The absence of good faith approach makes a determination based in part on feasability, efficiency, and the best interests of creditors.[10] These determinations are not at the heart of the doctrine. Moreover, the plain meaning approach protects the honest debtor by requiring a showing of dishonesty by the objecting party, rather than a showing of honesty by the debtor.

**C. The Burden of Proof**

Marrama did not address which party has the burden of persuasion in determining whether the debtor's conduct evidences sufficient bad faith to deny a motion to convert her case to Chapter 13. However, any ambiguities should be generally resolved in favor of the debtor, New Neighborhoods, Inc. West Virginia Workers' Compensation Fund, 886 F.2d 714, 719 (4th Cir. 1989), which supports the conclusion that the objecting party has the burden of proof.

---

[10]Language in Marrama controverts the use of this test. "There is an argument that the standards for good faith in a motion to convert under 11 U.S.C. § 706(a) should be the same as the standards for good faith in an initial Chapter 13 petition." Marrama, 127 S. Ct. at 1109 (citing In re Marrama, 430 F. 3d 474, 479 (1st Cir. 2005)("We can discern neither a theoretical nor a practical reason that Congress would have chosen to treat a first-time motion to convert a chapter 7 case to chapter 13 under subsection 706(a) differently from the filing of a chapter 13 petition in the first instance."). The key phrase here is "initial Chapter 13 petition." Issues of feasibility, efficiency, and the best interests of creditors are raised after the petition, usually at the Section 341 meeting and the Section 1325 plan confirmation hearing.

Placing the burden of proof on the objecting party, not the debtor, is also consistent with the plain meaning approach discussed above.[11]

**D. The Standard of Proof**

Marrama did not address the proper standard of proof to be applied. What standard must the objecting party meet? "The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.'" Addington v. Texas, 441 U.S. 418, 423 (1979)(quoting In re Winship, 397 U.S. 358, 370 (1970)). There are two standards of proof that are applicable to bankruptcy proceedings: clear and convincing, and preponderance of the evidence.

The preponderance of the evidence standard is applicable in civil actions, unless important individual interests are at stake, and then a clear and convincing standard is required. Grogan v. Garner, 498 U.S. 279, 286 (1991). The preponderance of the evidence standard is generally applied where there is a monetary dispute between private parties, where society has a minimal concern with the outcome. Addington, 441 U.S. at 423. Therefore, litigants "share the risk of error in roughly equal fashion." Id. In bankruptcy proceedings, for example, the preponderance of the evidence standard is used in cases that determine whether debts will be excepted from the debtor's discharge pursuant to Section 523(a). Grogan, 498 U.S. at 286.

A clear and convincing standard applies in cases where the interests at stake "are deemed

---

[11]The "honest" debtor has an absolute right to convert. Putting the burden of proof on the objecting party requires that party to demonstrate the debtor's dishonesty and avoids putting the debtor in the untenable position of having to prove a negative, i.e., that she was not dishonest.

to be more substantial than mere loss of money." In re Mark, 336 B.R. 260, 265 (Bankr. D. Md. 2006)(quoting Addington, 441 U.S. at 423-24). A clear and convincing evidence standard is used in "cases involving fraud or some other quasi-criminal wrongdoing by the defendant" or when there is a statutory presumption involved. Addington, 441 U.S. at 424; Mark, 336 B.R. at 265 (clear and convincing evidence is used to overcome the statutory presumption of bad faith in Section 362(c)(3)(A)).[12] This heightened standard of proof necessitates a showing of high probability or reasonable certainty, but it does not mean clear and unequivocal. Kent K. v. Bobby M., 110 P.3d 1013, 1018-19 (Az. 2005); Judicial Inquiry and Review Com'n of Virginia v. Peatross, 611 S.E.2d 392, 400 (Va. 2005). However, it does place a heavier burden upon one party to prove its case to a reasonable certainty. Judicial Inquiry and Review Com'n, 611 S.E.2d at 400.

This Court finds the proper standard to be the lower standard, preponderance of the evidence. While the Court recognizes that the "absolute right of the honest debtor" is an important consideration, it is not a liberty interest nor a statutory presumption. The Supreme Court's holding in Grogan guides this result. Grogan, 498 U.S. at 286 (holding Section 523(a) dischargability actions, including fraud, are decided by using a preponderance of the evidence standard). The issue involves a determination of what chapter of the Bankruptcy Code a debtor will use to pay and discharge her debts, not whether she is eligible to file bankruptcy at all. The

---

[12] A clear and convincing standard is also used when proving moral turpitude or when a clear liberty interest is at stake, such as commitment for mental illness, deportation, or denaturalization. See Woodby v. INS, 385 U.S. 276, 285 (1966)(deportation); Chaunt v. United States, 364 U.S. 350, 353 (1960)(denaturalization); Thompson v. Nicholson, 423 F. 3d 1279, 1283 (Fed. Cir. 2005)(liberty interest); Vogel v. American Warranty Home Service Corp., 695 F.2d 877, 882 (5th Cir. 1983)(fraud); U.S. v. Fatico, 458 F. Supp. 388, 404 (E.D.N.Y. 1978) (moral turpitude).

lower standard must be used to determine whether the debtor meets the definition of a debtor under Chapter 13.

**E. The Conduct of the Male Debtor**

A Chapter 7 debtor's request for conversion to Chapter 13 may be denied for "bad-faith conduct." Marrama, 127 S. Ct. at 1110. Therefore, the Court must determine whether the Debtors have acted in such bad faith as to qualify them as the "atypical" debtor described by Marrama. For Ms. Howard to prevail, she must demonstrate, by a preponderance of the evidence, that the Debtors engaged in such "bad-faith conduct" prior to filing the Motion to Convert.

In Marrama, the debtor misrepresented the value of real property on his petition and failed to disclose that he had transferred his property during the preceding year. Id. at 1107. When the Chapter 7 trustee sought recovery of the property, the debtor moved to convert the case to Chapter 13, and the trustee objected. Id. Other courts, following Marrama, have not allowed conversion from Chapter 7 to Chapter 13 where debtors made prepetition fraudulent transfers, improperly represented their financial situation on their schedules, and moved to convert their case due to the litigation filed by the trustee. See In re Piccoli, No. 06-2142, slip op. at *4-8 (E.D. Pa. Sept. 27, 2007)(2007 WL 2822001); In re Truong, No. 03-40283, slip op. at *3-4 (Bankr. D.N.J. Mar. 5, 2007)(2007 WL 708874). While the facts of this case differ greatly from Marrama, the analysis remains the same.

Ms. Howard's first argument is that the Debtors acted in bad faith by filing the Motion to Convert to take advantage of the law as it existed prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Prior to the enactment of

13

BAPCPA, Section 523(a)(15) of the Bankruptcy Code allowed the discharge of a debt owed to a former spouse if the hardship on the debtor outweighed the hardship to the former spouse. 11 U.S.C. § 523(a)(15). However, that section was amended by BAPCPA to prevent a debtor from discharging a debt to a former spouse, and it provides no hardship exception. The Court does not disagree with Ms. Howard's assessment of the law. However, her argument is flawed because the Debtors' Chapter 7 case was filed on February 6, 2006, several months after the effective date of BAPCPA.

Next, Ms. Howard argues that the male Debtor's violation of the Divorce Judgment by incurring unauthorized debts in Ms. Howard's name constitutes bad faith conduct sufficient to deny the Motion to Convert. There is no question that the male Debtor violated the Divorce Judgment by incurring substantial debt through credit cards on which both Ms. Howard and the male Debtor were liable. The issue is whether this conduct constitutes "bad-faith conduct."

The Court concludes that the conduct of the male Debtor, while it exhibited poor judgment, did not rise to the level of bad faith. First, the male Debtor contacted representatives of the credit card companies and told them that Ms. Howard would no longer be liable or responsible for the payment on the accounts. He testified that he believed that he alone would be responsible for payment. Second, even though Ms. Howard's name remained on one of the two credit card statements, the male Debtor was assured by the credit card companies that she would not be liable on the accounts. He was told by representatives of the credit card company that her name remained on the account only because the account was originally set up that way.[13] Third,

---

[13] The male Debtor testified to several hearsay statements during the hearing, but no party objected.

the male Debtor made payments on the debt until it became unfeasible for him to do so. The male Debtor's payments on the debt stopped when the female Debtor was diagnosed with cancer. Ms. Howard presented no evidence to controvert the male Debtor's testimony.[14]

Ms. Howard did not carry her burden of persuasion by a preponderance of the evidence. The Court cannot find that the conduct of the male Debtor constitutes "bad-faith conduct." Based on the evidence presented at the hearing, the Court finds that the Debtors are not attempting to convert their case to Chapter 13 in bad faith.

**F. Conversion After Discharge**

Ms. Howard argued that the Debtors' attempt to convert a case that was closed, in which they had already received a Chapter 7 discharge, is an abuse of bankruptcy process. If the Debtors successfully complete a converted Chapter 13, they could potentially receive another discharge, which would give the Debtors two discharges in one case. "There is nothing in the Bankruptcy Code that expressly bars a conversion from Chapter 7 to Chapter 13 after a discharge has been granted." In re Mosby, 244 B.R. 79, 83 (Bankr. E.D. Va. 2000). However, it has been held that a Chapter 7 discharge entered earlier in the same case must be vacated in order for the debtor to proceed under Chapter 13. In re Jeffrey, 176 B.R. 4, 6 (Bankr. D. Mass. 1994); see also

---

[14]While Ms. Howard's actions do not bear upon the issue of the male Debtor's conduct, the Court notes that she could have taken action to prevent this situation from occurring, mainly by cancelling the credit cards upon her divorce. She also could have prevented further liability when she became aware of the substantial debt in August of 2005. While Ms. Howard did not give the male Debtor permission to incur debt for which she would be liable, she took no corrective action once she learned of the debt. The only action that Ms. Howard took once the credit card debt showed up on her credit report was to confer with the male Debtor. She took no action to terminate either credit card or to remove herself from liability on the cards. She allowed the male Debtor to keep using the cards. Ms. Howard's judgment was no better than that of her former husband.

In re Hauswirth, 242 B.R. 95, 97 (Bankr. N.D. Ga. 1999); In re Leiter, 109 B.R. 922, 925 (Bankr. N.D. Ind. 1990); contra In re Young, 237 F.3d 1168 (10th Cir. 2001)(holding that there is no provision of the Bankruptcy Code that requires, as a condition of such conversion, that a Chapter 7 discharge be vacated and allowing the debtor two discharges in one case); Mosby, 244 B.R. at 83 (same).

While the Court agrees that a Chapter 7 discharge is not a per se bar to a debtor's ability to proceed under Chapter 13, the Court finds the reasoning of those courts that disallow a debtor to receive two discharges in the same case to be highly persuasive. Under Section 1328(f)(1) of the Bankruptcy Code, the Court shall not grant a discharge if the debtor has received a discharge in a case filed under Chapter 7 of the Code during the four-year period proceeding the date of the Order for relief under Chapter 13. Therefore, if the Debtors were to complete their Chapter 7 case and then subsequently file a Chapter 13 (colloquially known as a "Chapter 20"), the Debtors would not be allowed a discharge in the newly filed Chapter 13. 11 U.S.C. § 1328(f)(1). The Debtors should not be allowed to do indirectly, through conversion, what they cannot do directly by filing a new Chapter 13. Therefore, as a condition to granting the Motion to Convert, the Debtors must file a Motion to Revoke the Chapter 7 Discharge that was granted on May 22, 2006, within twenty days after the entry of the order that corresponds to this opinion. If the Debtors do not timely file such a motion, then the case will be reconverted to Chapter 7.

## V. CONCLUSION

The Debtors' prepetition and post-petition acts do not establish bad faith conduct. Therefore, the Motion to Convert will be granted, and the Objection will be overruled. Within twenty (20) days after the entry of this opinion, the Debtors must file a motion to revoke the

16

Chapter 7 Discharge that was granted on May 22, 2006. If the Debtors do not timely file such a motion, then the case will be reconverted to Chapter 7.

      This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | |
|---|---|
| IN RE: ) <br> ) <br> DAVID LUTHER GODWIN and ) <br> KIMBERLY W. GODWIN, ) <br> ) <br>     Debtors. ) <br> _____ ) | Case No. 06-50150 |

**PARTIES IN INTEREST**

Mr. David L. Godwin

Mrs. Kimberly W. Godwin

Ms. Connie Howard

Robert E. Price, Esq.

Brian P. Hayes, Esq.

C. Edwin Allman, III, Esq.

Michael D. West, Esq.